IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

WANDA BROWN                                          PLAINTIFF

V.                          CIVIL ACTION NO. 2:11-CV-180-KS-MTP

PRENTISS REGIONAL HOSPITAL AND
EXTENDED CARE FACILITY, INC.                         DEFENDANT

## Memorandum Opinion and Order

For the reasons stated below, the Court **grants in part and denies in part**
Defendant's Motion for Summary Judgment [56]. The Court **denies** the motion with
respect to Plaintiff's Title VII discrimination claim arising from her suspension without
pay, but the Court **grants** the motion as to Plaintiff's remaining claims. The Court
declines to address Defendant's arguments regarding Plaintiff's mitigation of damages.

## I. Introduction

Plaintiff, an African-American woman, began working at the Extended Care
Facility (the "Facility") at Prentiss Regional Hospital in March 2007. She started on
a PRN basis, but she was eventually promoted to Charge Nurse, a supervisory position.

In the summer of 2008, Sonja Broome, the MDS Coordinator at the Facility and
a Caucasian woman, informed the Director of Nursing ("DON") that she wished to go
into teaching. Broome worked part time in the MDS office, and she was assisted by
another part-time employee, Katrina Magee (also a Caucasian woman). After she
began teaching, Broome worked on a PRN basis, leaving an opening at the MDS
Coordinator position.

The MDS Coordinator is responsible for preparing required documentation for residents receiving Medicare benefits. The Facility only gets reimbursed for services if the documentation is accurate and submitted in a timely fashion. The DON transferred Plaintiff from Charge Nurse to MDS Coordinator. Plaintiff worked full-time, and she retained the same part-time assistant that had worked under Broome.

In December 2008, Broome decided that she did not like teaching and asked the DON if she could return to her previous part-time position in the MDS office. Although the Facility was never fined or denied reimbursement, the DON believed that the MDS documentation was not being prepared quickly enough. Accordingly, the DON allowed Broome to come back on a part-time basis to assist Plaintiff.

In February 2009, both the DON and Facility Administrator were terminated. The Hospital hired an outside consultant to analyze the Facility and make recommendations. The consultant, Linda Bass, believed that there were too many people working in the MDS office. She noted that, in the past, the same amount of work had been performed by the equivalent of less than one full-time employee, but that there were currently three people working in the office – one full-time, and two part-time. She looked at the office's work over a three-month period and determined that Broome had completed the most MDS documentation during that period, despite only working on a part-time basis. She gave her findings to the Hospital's CEO, who instructed the interim DON, Melissa Berry, to fix the staffing problem.

On March 30, 2009, Berry decided to move Plaintiff back to Charge Nurse, make Broome the full-time MDS Corodinator, and terminate Katrina Magee. Berry also

planned to reduce Broome's hours to part-time status once the MDS work got caught up. After these changes, Plaintiff received the same hourly wage, and she worked the same schedule. Berry, the interim DON, and Lindalee Slegelmilch, the interim Facility Administrator, also encouraged Plaintiff to apply for the open DON position. Plaintiff did not do so.

On May 4, 2009, the Hospital hired Ronnie Sibley as the new DON of the Facility. On May 20, 2009, he demoted Broome from the MDS Coordinator position because she had too many absences and had fallen behind on the MDS documentation.[1] Around the same time, the Hospital decided to gradually stop admitting Medicare patients to the Facility, rendering the MDS Coordinator position unnecessary.[2] After Broome was demoted, several employees were asked to help with the MDS documentation, including Plaintiff.

Plaintiff was scheduled for vacation starting on June 11, 2009, and she planned to return to work on June 19, 2009. On June 10, 2009, Plaintiff's last day of work before her vacation, she did not fill out the nurse assignment sheet for June 11, 2009.[3] As a result, the Facility was understaffed on June 11, 2009, and Sibley pulled Bonnie Clark from her duties as Medicaid MDS Coordinator to work on the floor. Sibley

---

[1]Sibley ultimately terminated Broome on June 15, 2009, because she was not available for work when he called her.

[2]The last Medicare patient left the Facility on July 31, 2009.

[3]A factual dispute exists as to whether filling out the assignment sheets was Plaintiff's duty. The Court will discuss this issue below.

believed that Plaintiff should have ensured that the Facility would be adequately staffed before she left for vacation.

On June 19, 2009, a new patient who required a feeding pump was scheduled to arrive at the Facility. Sibley informed Plaintiff of the patient's arrival and noted that a feeding pump would be needed. Plaintiff disputes whether Sibley ordered her to obtain a pump for the patient, but, regardless, there was no feeding pump available when the new patient arrived. Sibley believed that Plaintiff should have obtained a feeding pump prior to the patient's arrival.[4]

On June 24, 2009, Sibley issued two disciplinary write-ups to Plaintiff and suspended her without pay for three days. One write-up was for her failure to assign an adequate number of nurses on June 11, 2009, and the other write-up was for her failure to obtain a feeding pump on June 19, 2009. When presented with the write-ups, Plaintiff disputed them, but she did not express her belief that she was being discriminated against because of her race.

On June 25, 2009, Plaintiff gave Diane Daughdrill, the Facility's Human Resources Director, a typed statement in which she claimed that the write-ups and suspension were motivated by racial discrimination. She also claimed that she had been subjected to a hostile working environment. On July 1, 2009, Plaintiff faxed Daughdrill a second document, in which she claimed that Berry's staffing decisions on March 30 – pursuant to which Plaintiff was moved back to Charge Nurse and Broome

---

[4]A factual dispute exists as to the Facility's typical procedure in such situations. The Court will discuss the issue below.

was moved back to MDS Coordinator – were motivated by racial discrimination.

Plaintiff asked to meet with the Hospital's CEO according to the grievance procedure outlined in the Employee Handbook. After reviewing the disciplinary reports and Plaintiff's typed complaints, the CEO concurred with Sibley's actions and determined that a meeting with Plaintiff was not necessary, and Daughdrill informed Plaintiff of the CEO's decision. Plaintiff was scheduled to return to work on July 3, 2009, but she did not do so.

On June 26, 2009 – prior to her second written complaint and the resolution of the grievance procedure – Plaintiff filled out an application to work at another nursing home facility, Haven Hall. She resigned her employment with Defendant on July 2, 2009, and began working at Haven Hall on July 20, 2009.

Plantiff initiated this litigation on September 6, 2011. Defendant eventually filed a Motion for Summary Judgment [56], which is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts

showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

Plaintiff asserted a variety of claims under both federal and state law. First, she claims Defendant intentionally discriminated against her on the basis of her race in violation of Title VII. Second, she claims that Defendant retaliated against her because she engaged in an activity protected by Title VII. Third, she claims that Defendant subjected her to a hostile work environment in violation of Title VII. Finally, she asserted a variety of state law claims, including breach of contract, negligence, tortious interference with employment, defamation, and intentional infliction of emotional distress.

### A.    *Title VII Discrimination*

The Court applies a modified version of the *McDonnell Douglas* burden-shifting framework in Title VII discrimination cases. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). "To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). To establish a prima facie case of discrimination under Title VII, a plaintiff must present evidence that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Wesley v. Gen. Drivers, Warehousemen & Local 745*, 660 F.3d 211, 213 (5th Cir. 2011).

"If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis*, 383 F.3d at 317. "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

If the defendant can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and the plaintiff "must then offer sufficient evidence to create a genuine issue of material fact either (1) that [the defendant's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [the defendant's] reason, while true, is

7

only one of the reasons for its conduct, and another motivating factor is [the plaintiff's] protected characteristic (mixed-motives alternative)." *Vaughn*, 665 F.3d at 636.

Plaintiff's Title VII discrimination claims stem from four events: her transfer from MDS Coordinator to Charge Nurse; her receipt of two disciplinary write-ups; her suspension without pay; and her alleged constructive discharge.[5] The Court will examine each discrimination claim in turn.[6]

### 1.    *Transfer from MDS Coordinator to Charge Nurse*

The Court will assume, without deciding, that Plaintiff can make out a prima facie case of discrimination with respect to the transfer from MDS Coordinator to Charge Nurse. Therefore, Defendant has the burden to articulate a legitimate nondiscriminatory reason for the transfer. *Black*, 646 F.3d at 259.

Defendant claims that Plaintiff fell behind in her work as MDS Coordinator, requiring Defendant to bring back the person who had previously held the position, Sonja Broome, to assist in preparing the Medicare documentation. At that point – December 2008 – there were three employees performing the duties of an MDS Coordinator. In February 2009, a consultant performed an audit of the facility and concluded that only one person was required to complete the MDS paperwork. The

---

[5]Plaintiff asserted "constructive discharge" as a cause of action, "but constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action" in a Title VII case. *Wells v. City of Alexandria*, 2004 U.S. App. LEXIS 8525, at *9-*10 (5th Cir. Apr. 29, 2004).

[6]Plaintiff conceded her claim that Defendant paid her less than it paid similarly situated Caucasian employees.

consultant examined the work output of the three MDS employees over a three-month period and concluded that Sonja Broome had been the most productive worker. The interim DON, Melissa Berry, believed that Plaintiff's skills were a better fit for the position of daytime Charge Nurse. Berry needed someone on whom she could depend, and the facility residents and their families knew Plaintiff and were comfortable with her. Therefore, Berry decided to move Plaintiff to Charge Nurse. The Court concludes that Defendant's explanation constitutes a legitimate nondiscriminatory reason for the transfer. *See Baker v. Fedex Ground Package Sys.*, 278 F. App'x 322, 327 (5th Cir. 2008) (employer transferred an employee because of her particular strengths and the need to boost productivity).

Accordingly, the burden shifts back to Plaintiff to either prove "that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose," or that her "protected characteristic was a motivating factor . . . ." *Black*, 646 F.3d at 259. Plaintiff did not even attempt to meet this burden. She failed to provide any evidence that Defendant's asserted reason for the transfer is false or that her race was a motivating factor in the decision. In fact, she failed to provide any argument related to the pretext stage of the analysis. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's Title VII discrimination claim stemming from the transfer from MDS Coordinator to Charge Nurse.

2.    *Disciplinary Write-Ups*

Defendant argues that the Plaintiff's receipt of disciplinary write-ups does not

constitute an adverse employment action in the context of a Title VII discrimination claim. Defendant is correct. For Title VII discrimination claims, only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating" qualify as adverse employment actions. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Although the United States Supreme Court broadened the definition of adverse employment actions in the context of Title VII *retaliation* claims, the Fifth Circuit declined to extend the holding to Title VII *discrimination* claims. *Id.* at 559-60. Disciplinary reprimands do not constitute ultimate employment decisions, and, therefore, they are not adverse employment actions in the Title VII discrimination context. *See Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 658 (5th Cir. 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 66, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999) (adverse employment actions do not encompass "events such as disciplinary filings [and] supervisor's reprimands"). Accordingly, the Court finds that Plaintiff failed to make out a prima facie case of discrimination based on her receipt of disciplinary write-ups.

3.   *Suspension*

With respect to Plaintiff's suspension, Defendant first argues that a suspension is not an ultimate employment action and, therefore, not an adverse employment action. However, Plaintiff was suspended *without pay*. Therefore, the suspension

affected her compensation,[7] and it qualifies as an adverse employment action in the Title VII discrimination context. *Hypolite v. City of Houston*, 2012 U.S. App. LEXIS 21352, at *20 (5th Cir. Oct. 15, 2012) (temporary suspension without pay qualified as adverse employment action, but court did not distinguish between discrimination and retaliation claims); *Moore v. True Temper Sports, Inc.*, 2011 U.S. Dist. LEXIS 111034, at *8 (N.D. Miss. Sept. 27, 2011); *contra Wynn v. Miss. Dep't of Human Servs.*, 2011 U.S. Dist. LEXIS 86458, at *9-*10 (S.D. Miss. Aug. 4, 2011) (suspension without pay was not an adverse employment action).

Next, Defendant argues that Plaintiff failed to present sufficient evidence to create a prima facie case of discrimination insofar as Plaintiff failed to provide evidence of similarly situated white employees who were not disciplined under nearly identical circumstances. However, Plaintiff can also establish a prima facie case by providing evidence that she did not violate the work-rules at issue. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892-93 (5th Cir. 2012). "[I]n work-rule violation cases . . . a Title VII plaintiff may establish a prima facie case by showing either that he did not violate the rule, or that if he did, white employees who engaged in similar acts were not punished similarly." *Id.*

With regard to Plaintiff's failure to schedule enough nurses, she testified that the Director of Nurses – Sibley – was responsible for making out the work schedule, but that she sometimes prepared it as a courtesy. She also testified that if a Charge

---

[7]*See McCoy*, 492 F.3d at 559 (ultimate employment actions include those involving compensation).

Nurse were responsible for filling out the schedule, it would have been the night Charge Nurse, which was not her. As for Plaintiff's failure to obtain a feeding pump, Plaintiff testified that Sibley never instructed her to obtain the feeding pump before the new patient arrived, and that she would have followed such instructions if they had been given. She also testified that she looked for a pump and told Sibley before her shift ended that there was not one available in the facility. According to her, he said that was fine, and she told another nurse that a pump would be needed. Plaintiff testified that the typical procedure was to wait until the resident arrives and then fax a request for a feeding pump to Jackson. She maintains that her actions were consistent with the manner in which things were typically done.

In the Court's opinion, this testimony is sufficient to create a genuine dispute of material fact as to whether Plaintiff committed any rule violation. Accordingly, Plaintiff presented enough evidence to make out a prima facie case of discrimination. *Id.*; *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980).

Finally, Defendant argues that Plaintiff failed to present any evidence that its reason for suspending her was pretext for discrimination or that discrimination was a motivating factor. To demonstrate pretext, Plaintiff must provide evidence that Defendant's "proffered explanation is false or unworthy of credence." *Vaughn*, 665 F.3d at 637. As noted above, Plaintiff's testimony is sufficient to create a genuine dispute of material fact as to whether she actually committed any rule violations. That is enough to meet her burden at the pretext stage of the analysis. *Reeves v. Sanderson*

*Plumbing Prods.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Vaughn*, 665 F.3d at 637. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Ameristar Airways, Inc. v. Admin. Review Bd.*, 650 F.3d 562, 570 (5th Cir. 2011).

For all of the reasons stated above, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's Title VII discrimination claim stemming from her suspension without pay.

### 3.    *Constructive Discharge*

Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to any Title VII discrimination claim premised upon an alleged constructive discharge. Plaintiff failed to offer any argument in response. Title VII plaintiffs "must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Therefore, the scope of a Title VII case is "limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *McClain v. Lufkin Indus.*, 519 F.3d 264, 274 (5th Cir. 2008), *cert. denied* 555 U.S. 881, 129 S. Ct. 198, 172 L. Ed. 2d 141 (2008). Therefore, "a claimant is not required to assert all legal claims in the EEOC charge; rather, it is sufficient if in the EEOC charge the claimant asserts the facts that are the basis for the legal claims." *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 795 (5th Cir.

2002).

A resignation can be actionable under Title VII if it qualifies as a constructive discharge. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* To determine whether a reasonable person would feel compelled to resign, the Court looks for the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (punctuation omitted). The plaintiff must prove "a greater degree of harassment than that required by a hostile environment claim." *Id.* Discrimination alone is insufficient to establish constructive discharge; there must be aggravating factors. *Id.*

Plaintiff did not allege in her EEOC charge that she had resigned her position, much less that she felt compelled to do so because of her working conditions. Furthermore, she did not allege any "aggravating factors" which would support a constructive discharge claim. Therefore, the facts alleged in Plaintiffs charge of discrimination were insufficient to form the basis of a discrimination claim premised upon constructive discharge, *see Harris*, 286 F.3d at 795, and an EEOC investigation of constructive discharge could not reasonably be expected to grow from Plaintiff's charge. *McClain*, 519 F.3d at 274. Accordingly, Plaintiff failed to exhaust her

administrative remedies with respect to any Title VII claim stemming from an alleged constructive discharge.

## B.    *Title VII Retaliation*

Plaintiff also alleges that Defendant retaliated against her because she complained that her transfer from MDS Coordinator to Charge Nurse was motivated by racial discrimination. The *McDonnell Douglas* framework applies to Title VII retaliation claims. *Taylor v. UPS*, 554 F.3d 510, 523 (5th Cir. 2008). To make out a prima facie case, Plaintiff must prove "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Id.*

### 1.    *Protected Activity*

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). But "Title VII does not protect opposition to all forms of unscrupulous conduct. Instead, Title VII protects only opposition to discrimination based on race, color, religion, sex, or national origin. Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010).

Plaintiff failed to identify the specific protected activity which she claims prompted Defendant's retaliation. Rather, she generally stated in her briefing and

Amended Complaint that Defendant reprimanded and suspended her because she complained about being discriminated against. Defendant argues that Plaintiff can not assert Title VII retaliation claims premised upon general complaints about her transfer from MDS Coordinator to Charge Nurse which were unrelated to Plaintiff's belief that she had been discriminated against. Defendant is correct. Plaintiff may have complained about the transfer, but her complaints only constituted "protected activity" if they alerted Defendant to Plaintiff's belief that unlawful discrimination had occurred. *Id.*

The record contains evidence of three statements by Plaintiff that could fall within that category. First, Plaintiff testified that another nurse told her that Wanda Hamilton, who was in charge of activities at the facility and not Plaintiff's supervisor, had said that Plaintiff had been transferred to Charge Nurse because she did not "catch on as fast" as Sonja Broome, who replaced her as MDS Coordinator. Plaintiff confronted Hamilton and asked her why Broome "caught on faster," and whether it was "because of the color of her skin." The record contains no evidence that Hamilton told anyone in a supervisory position about this conversation.

Second, on June 25, 2009 – the day after Plaintiff received the disciplinary write-ups and suspension – Plaintiff gave Diane Daughdrill, the facility's director of human resources, a typed statement in which she disputed the write-ups, expressed her belief that she was working in a hostile environment, and claimed to have been the victim of discrimination. Finally, on July 1, 2009, Plaintiff provided Daughdrill with another typed statement in which she claimed that the transfer from MDS Coordinator to

Charge Nurse was motivated by discrimination.

If Plaintiff intended to assert a retaliation claim stemming from any other statements or complaints on her part, she failed to present any evidence of such opposition activity. Therefore, the Court grants Defendant's motion for summary judgment as to any Title VII retaliation stemming from alleged opposition activity other than the three statements noted above.

2. *Causation*

Next, Defendant argues that Plaintiff failed to offer any evidence of a causal link between the reprimands/suspension and Plaintiff's protected opposition activity. First, the record contains no evidence that any individual in a supervisory position knew about Plaintiff's conversation with Wanda Hamilton. Diane Daughdrill, the Facility's director of human resources, testified by affidavit that Plaintiff never voiced a belief that the transfer was motivated by discrimination until after she had already been suspended. Melissa Berry, the interim DON at the time of Plaintiff's transfer, testified by affidavit that Plaintiff never complained that the transfer was motivated by discrimination. Berry further testified that she had no knowledge of Plaintiff's conversation with Wanda Hamilton until this litigation began. Ronnie Sibley, the DON at the time of Plaintiff's discipline and suspension, testified by affidavit that Plaintiff wanted to return to the MDS Coordinator position, but she never complained that the transfer was discriminatory. Sibley further testified that he never heard from another employee that Plaintiff believed the transfer was discriminatory.

Plaintiff did not offer any evidence disputing this testimony or indicating that

anyone in a supervisory position knew of her conversation with Hamilton. If Plaintiff's supervisors did not know about Plaintiff's opposition activity, then their decisions could not have been motivated by retaliation. *See Ackel*, 339 F.3d at 385-86 (where plaintiff failed to present evidence that the decsionmaker knew about her complaint, she failed to make out a prima facie case of retaliation).

As for the two typed statements, it is undisputed that Plaintiff gave both of them to Daughdrill after she had already been suspended. Plaintiff was reprimanded and suspended on June 24, 2009. Plaintiff gave the first typed statement to Daughdrill on June 25, 2009, and she gave the second one to Daughdrill on July 1, 2009. Therefore, the reprimands and suspension could not have been motivated by retaliation for the typed statements.

For all of the reasons stated above, the Court grants Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claims.

## C.    *Title VII Hostile Work Environment*

To establish a hostile work environment claim under Title VII, a plaintiff must prove that she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

18

abusive working environment." *Id.*

Defendant argues, among other things, that Plaintiff failed to exhaust her administrative remedies with respect to a hostile work environment claim. The Court agrees. Defendant's EEOC charge contains no specific mention of harassment or a hostile work environment, and Plaintiff failed to assert any facts in the EEOC charge demonstrating severe or pervasive racial harassment. *See Harris*, 286 F.3d at 795. Therefore, Plaintiff could not have reasonably expected a hostile work environment investigation to grow out of the charge. *McClain*, 519 F.3d at 274. Furthermore, the substantive allegations of the charge clearly demonstrate Plaintiff's intention to assert claims for discrimination and retaliation, but not a hostile work environment. *See Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 569-70 (5th Cir. 2012); *Sanchez v. USPS*, 430 F. App'x 368, 371-72 (5th Cir. 2011); *Turner v. Novartis Pharms. Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011). Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claim.

## D. *State Law Claims*

### 1. *Breach of Contract*

Plaintiff stated during her deposition that her claim for "breach of company policy" relates to Defendant's failure to post the MDS Coordinator position in March 2009. Plaintiff has not presented any evidence of a written policy to post all positions before they are filled, but she testified that she was told that was the policy when she began working for Defendant. Therefore, Defendant argues that Plaintiff's claim for "breach of company policy" is a claim for breach of an unwritten employment contract.

Plaintiff did not contest this characterization of the claim. Therefore, the Court will assume that Plaintiff intended to plead a claim for breach of an unwritten employment contract.

The statute of limitations for breach of an unwritten employment contract is one year from the date of accrual. *See* MISS. CODE ANN. § 15-1-29. Defendant allegedly breached its own unwritten policy in March 2009 when it filled the MDS Coordinator position without first posting it. Plaintiff resigned her employment at the facility on July 2, 2009. She filed her initial Complaint on September 6, 2011 – over two years after the events which led to this lawsuit. Therefore, Plaintiff's claim for breach of an unwritten employment contract is barred by the applicable statute of limitations.

### 2. *Defamation*

Defendant argues that Plaintiff's defamation claim is barred by the applicable statute of limitations. Claims for defamation are subject to a one-year statute of limitations. MISS. CODE ANN. § 15-1-35; *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1213-14 (Miss. 2003). Plaintiff failed to identify the specific statements which constituted defamation, but all of the events which led to this case occurred no later than July 2, 2009, the date upon which Plaintiff resigned her position. Plaintiff filed her initial Complaint on September 6, 2011 – over two years later. Therefore, her claim for defamation is barred by the applicable statute of limitations.

### 3. *Intentional Infliction of Emotional Distress*

Defendant argues that Plaintiff's claim for intentional infliction of emotional distress is barred by the applicable statute of limitations. The statute of limitations for

intentional infliction of emotional distress is one year after the claim accrues. MISS. CODE ANN. § 15-1-35; *Trustmark Nat'l Bank v. C. Brent Meador*, 81 So. 3d 1112, 1118 (Miss. 2012). All of the events which led to this case occurred no later than July 2, 2009. Plaintiff filed her initial Complaint on September 6, 2011 – over two years later. Therefore, her claim for intentional infliction of emotional distress is barred by the applicable statute of limitations.

### 4. *Tortious Interference*

Plaintiff also asserted a claim for tortious interference with employment. This is the same as a claim for tortious interference with contract. *See Stephen v. Winston Cnty.*, 2008 U.S. Dist. LEXIS 89511, at *23 (N.D. Miss. Nov. 4, 2008); *cf. Levens v. Campbell*, 733 So. 2d 753, 759-60 (Miss. 1999). However, under this theory of relief, "a cause of action exists by a party to a contract against some third, outside person who causes the party not to perform. Thus, in order to pursue a cause of action, it is accepted that the wrongdoer is a 'stranger' to the contract which was interfered with – an outsider. A party to a contract cannot be charged with interfering with his own contract." *Cenac v. Murray*, 609 So. 2d 1257, 1269 (Miss. 1992). Therefore, Defendant can not be charged with interfering with its own employment contract, and the Court grants its motion for summary judgment as to Plaintiff's tortious interference claim.

### 5. *Negligence*

Plaintiff's negligence claim pertains to Defendant's failure to post the MDS Coordinator position in March 2009. Defendant argues that the Mississippi Worker's Compensation Act provides the exclusive remedy for claims sounding in negligence.

Plaintiff did not respond to this argument, but it is axiomatic that the Worker's Compensation Act provides the exclusive remedy for an employee's negligence claims against her employer for a work-related injury. *See Gallagher Bassett Servs. v. Malone*, 30 So. 3d 301, 307-308 (Miss. 2010). Therefore, Plaintiff's negligence claim is barred. *See Wynn*, 2011 WL 3423142 at *8; *Benoit v. Bates*, 2010 WL 4637672, at *4 (S.D. Miss. Nov. 8, 2010); *McNeill v. City of Canton, Miss.*, 2008 WL 249437, at *15 (S.D. Miss. Jan. 29, 2008).

## E.    *Mitigation of Damages*

Defendant argues that Plaintiff failed to adequately mitigate her damages after she resigned her position on July 2, 2009. It is not necessary to address this issue, as the Court granted Defendant's motion for summary judgment as to all of Plaintiff's claims except her Title VII discrimination claim stemming from her suspension without pay. Plaintiff resigned her position, and the Court found that she had failed to exhaust her remedies with regard to her constructive discharge claim. Therefore, the only period of time for which Defendant may be liable for lost pay or benefits is the time period of the suspension.

## IV. CONCLUSION

For the reasons stated above, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [56]. The Court **denies** the motion with respect to Plaintiff's Title VII discrimination claim arising from her suspension without pay, but the Court **grants** the motion as to Plaintiff's remaining claims. The Court declines to address Defendant's arguments regarding Plaintiff's mitigation of damages.

SO ORDERED AND ADJUDGED this 19th day of February, 2013.


                              *s/ Keith Starrett*
                              UNITED STATES DISTRICT JUDGE